**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | |
|---|---|
| DALE BECKER,<br><br>                    Plaintiff,<br><br>          v.<br><br>QUALITY STAINLESS PRODUCTS, INC.<br>and V.S.E. OF GEORGIA, INC.,<br><br>                    Defendants. | CIVIL ACTION NO.: 9:24-cv-06476-BHH<br><br><br><br><br>**COMPLAINT** |

        Plaintiff Dale Becker ("Becker"), by and through undersigned counsel, complains of

Defendants Quality Stainless Products, Inc. ("Quality Stainless") and V.S.E. of Georgia, Inc.

("VSE") (with Quality Stainless and VSE together, "Defendants"), as follows:

**PARTIES, JURISDICTION, AND VENUE**

        1.        Becker is and at all relevant times was a citizen of South Carolina and resides and

at all relevant times resided in South Carolina.

        2.        Quality Stainless is a corporation incorporated in and operating from its principal

place of business in Missouri.

        3.        Machines and parts manufactured by Quality Stainless presently are and at all

relevant times were sold and distributed throughout the United States, including South Carolina.

        4.        Quality Stainless designed, manufactured, distributed, and sold the machine at issue

in this case—an air operated strut compressor, model number DB-8000-XL (the "Strut

Compressor")—with knowledge and the intent that it be placed into operation and continuously

used in an automotive service business—Butler Chrysler Dodge Jeep ("Butler")—in Beaufort,

1

South Carolina.

5.     Quality Stainless shipped the Strut Compressor to Butler's automotive service business location in Beaufort, South Carolina.

6.     VSE distributed and sold the Strut Compressor to Butler.

7.     VSE installed the Strut Compressor at Butler's facility in Beaufort, South Carolina.

8.     Quality Stainless and VSE purposefully availed themselves of the privilege of conducting business in South Carolina and thereby invoked the benefits and protections of South Carolina law.

9.     The Court has personal jurisdiction over Quality Stainless and VSE.

10.     The Court possesses jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.00.

11.     Venue is appropriate in the South Carolina District Court, Beaufort Division because a substantial part of the acts and omissions giving rise to this action occurred in Beaufort County, South Carolina.

**FACTUAL BACKGROUND**

12.     The Strut Compressor is a machine that uses compressed air and pneumatic cylinders to compress the spring on an automobile suspension strut assembly, thereby allowing the user to rebuild the strut by removing and replacing various strut components.

 



13.     Bulter purchased the Strut Compressor from VSE in 2019.

14.     Fulfilling Butler's purchase, VSE purchased the Strut Compressor from Quality Stainless.

15.     Quality Stainless designed, manufactured, distributed, and sold the Strut

3

Compressor.

16.    Quality Stainless shipped the Strut Compressor to Butler's business.

17.    VSE installed the Strut Compressor at Butler's business.

18.    On January 12, 2023, Becker was working as an employee of Butler at the Beaufort automotive service business as a mechanic.

19.    On January 12, 2023, Becker had been working as an automotive mechanic for more than forty years, had used the Strut Compressor approximately seventy-five to one hundred times, and had compressed struts and used other strut compressor machines thousands of times.

20.    At no point prior to January 12, 2023, had Becker had any issue using the Strut Compressor or been aware of any malfunction or defect in the Strut Compressor.

21.    On January 12, 2023, the Strut Compressor was in place and operational at the Butler facility without any material changes or alterations having been made to the Strut Compressor since its installation at the facility.

22.    Working to repair a vehicle's struts, Becker placed a strut assembly onto the Strut Compressor to compress the spring and remove the strut.

23.    Becker inserted the strut assembly into the Strut Compressor, seated the spring onto the claws, lowered the "safety cage," and used the foot control pedal to activate and energize the machine and compress the spring.

24.    After the spring was fully compressed, Becker took the strut out of the strut assembly and was in the process of placing a new strut into the strut assembly when he heard a loud bang, was struck in the head by a part flying from the machine, and was knocked backwards across the room.

25.    Becker was lying on the floor bleeding from his mouth and face and with the spring and other strut assembly parts strewn across the floor.

26.    Becker got up from the floor, walked into the main shop area, and called for help.

27.    Becker was transported to the hospital where he was found to have extensive injuries including fractures of the orbital bones for both eyes, fractures of the sinuses, fractures of the nose, fractures of the cheek bone, fractures of other facial bones, six teeth knocked out, and a concussion.

28.    On January 12, 2023, Becker was using the Strut Compressor in the manner contemplated and directed by Quality Stainless and VSE.

29.    A compressed spring in a strut compressor is and is known in the automotive equipment manufacturing industry to be dangerous to the user of a strut compressor because it is a stored-energy hazard whereby the sudden and unintentional release of the spring causes the spring to rapidly decompress with great force thereby causing the spring to fly out of the strut compressor at substantial speed and with substantial force or project other parts of the strut assembly out of the strut compressor at substantial speed and with substantial force.

30.    Quality Stainless designed, manufactured, distributed, and sold the Strut Compressor in an unreasonably unsafe and defective condition where:

> a.  The four claws intended to restrain the spring during compression were designed and manufactured in a manner such that they do not fully restrain the spring and do not prevent the spring from coming loose and forcefully shooting out of the Strut Compressor;
>
> b.  The four arms holding the four claws intended to restrain the spring during

compression were designed and manufactured in a manner such that the arms could not be locked into place and could move even after the claws were set against a spring to be compressed;

c.   The "safety cage" was designed and manufactured in a manner whereby it does not prevent a suddenly and unintentionally decompressed spring from shooting out of the Strut Compressor and striking a user or from projecting other parts of the strut assembly and causing those parts to strike a user; and

d.   The Strut Compressor was designed and manufactured in a manner whereby the operator is not physically separated and guarded from the known hazard of a compressed spring.

31.     The design and manufacture of the Strut Compressor such that the claws do not fully restrain the spring and do not prevent the spring from coming loose while compressed was an unreasonably dangerous condition and was a defective condition that proximately caused Becker's injuries.

32.     The design and manufacture of the Strut Compressor such that the four arms holding the four claws intended to restrain the spring during compression could not be locked into place and could move even after the claws were set against a spring to be compressed was an unreasonably dangerous condition and was a defective condition that proximately caused Becker's injuries.

33.     The design and manufacture of the Strut Compressor such that the Strut Compressor failed to provide a means to positively restrain the spring while it is being compressed and failed to prevent uncontrolled ejection from the claws was an unreasonably dangerous

condition and was a defective condition that proximately caused Becker's injuries.

34.    The design and manufacture of the Strut Compressor such that the "safety cage" does not prevent a suddenly and unintentionally decompressed spring from shooting out of the Strut Compressor or projecting other parts of the strut assembly out of the Strut Compressor was an unreasonably dangerous condition and was a defective condition that proximately caused Becker's injuries.

35.    The design and manufacture of the Strut Compressor such that the operator is not physically separated from the hazard of a compressed spring was an unreasonably dangerous condition and was a defective condition that proximately caused Becker's injuries.

36.    An available alternative design for the Strut Compressor was to include upper and lower claw components on each claw thereby locking the spring in the claws when the spring was compressed.

37.    An available alternative design for the Strut Compressor was to include a locking mechanism which locks the claw arms into place when the spring is seated in the claws.

38.    An available alternative design for the Strut Compressor was to include a safety chain to be wound through a spring and secured with a bolt prior to the spring being compressed.

39.    An available alternative design for the Strut Compressor was to enlarge the "safety cage," reduce the spacing between the bars of the "safety cage" or install metal screening between the bars, and add a top or lid to the "safety cage."

40.    The danger posed by the sudden, unintentional decompression of a spring in the Strut Compressor is a substantial danger as shown by the physical injuries suffered by Becker.

41.    The danger posed by the sudden, unintentional decompression of a spring in the

Strut Compressor is a substantial danger as shown by the recognition of the substantial danger of that hazard recognized in the automotive equipment manufacturing industry and as shown by the warnings and safety features and precautions implemented by designers, manufacturers, and distributors of strut compressors other than Quality Stainless and VSE.

42.     The available alternative designs would not cause a substantial increase in the price of the Strut Compressor in relation to the price of the Strut Compressor without any of the available alternative designs and in relation to the extreme physical injuries Becker suffered.

43.     The available alternative designs would not cause any decrease in the functioning or utility of the Strut Compressor.

44.     The available alternative designs would not create any safety concerns.

45.     Quality Stainless and VSE failed to warn Becker of the unreasonably dangerous condition of the Roller.

46.     The Strut Compressor and the associated "Operating Instructions" failed to warn Becker that the claws do not fully restrain the spring and do not prevent the spring from coming loose and forcefully shooting out of the Strut Compressor and striking a user or from projecting other parts of the strut assembly and causing them to forcefully strike a user.

47.     The Strut Compressor and the associated "Operating Instructions" failed to warn Becker that the four arms holding the four claws intended to restrain the spring during compression could move after the claws were set thereby allowing the spring to no longer be restrained by the claws and suddenly and unintentionally decompress and forcefully strike the user or project other parts of the strut assembly and cause them to forcefully strike the user.

48.     The Strut Compressor and the associated "Operating Instructions" failed to warn

8

Becker that the "safety cage" does not prevent a suddenly and unintentionally decompressed spring from shooting out of the Strut Compressor and forcefully striking a user or from projecting other parts of the strut assembly and causing them to forcefully strike a user.

**FOR A FIRST CAUSE OF ACTION**
**Strict Products Liability**
**As to Quality Stainless and VSE**

49.     Plaintiff realleges the allegations in the preceding paragraphs as if fully set forth herein.

50.     Defendants had duties to design, test, manufacture, assemble, distribute, sell, install, and inspect the Strut Compressor so as to not subject users to a machine in a defective and unreasonably dangerous condition.

51.     Defendants breached their duties to design, test, manufacture, assemble, distribute, sell, install, and inspect the Strut Compressor so as to not subject users to a machine in a defective and unreasonably dangerous condition.

52.     The Strut Compressor was defective and unreasonably dangerous at the time it was installed at the Butler facility and on January 12, 2023.

53.     The Strut Compressor was designed, manufactured, distributed, sold, supplied, and installed in a defective and unreasonably dangerous condition because the four claws intended to restrain a spring during compression do not fully restrain the spring and do not prevent the spring from coming loose and forcefully shooting out of the Strut Compressor.

54.     The Strut Compressor was designed, manufactured, distributed, sold, supplied, and installed in a defective and unreasonably dangerous condition because the four arms holding the four claws intended to restrain a spring during compression could not be locked into place and

9

could move even after the claws were set against a spring to be compressed, thereby allowing the spring to come off the claws and suddenly and unintentionally decompress.

55.    The Strut Compressor was designed, manufactured, distributed, sold, supplied, and installed in a defective and unreasonably dangerous condition because the "safety cage" does not prevent a suddenly and unintentionally decompressed spring and other parts of the strut assembly from shooting out of the Strut Compressor or from projecting other parts of the strut assembly out of the Strut Compressor.

56.    The Strut Compressor was designed, manufactured, distributed, sold, supplied, and installed in a defective and unreasonably dangerous condition because the operator of the machine is not physically separated from the hazard of a compressed spring.

57.    Available alternative designs existed at the time the Strut Compressor was designed, manufactured, distributed, sold, supplied, and installed.

58.    Each available alternative design, a combination of the available alternative designs, or all of the available alternative designs together would have prevented Becker's injuries without impairing or without substantially impairing the Strut Compressor's utility.

59.    The available alternative designs were recognized, economically feasible, and technologically feasible at the time the Strut Compressor was designed, manufactured, distributed, sold, supplied, and installed.

60.    The Strut Compressor was defective and unreasonably dangerous because it was designed, manufactured, distributed, sold, supplied, and installed without warning users of the unreasonably dangerous condition of the Strut Compressor and without instructing users to take any precautions to protect themselves from the unreasonably dangerous condition of the machine.

10

61.    Defendants' breaches of their duties and the defective and unreasonably dangerous condition of the Strut Compressor proximately caused Becker's injuries.

62.    As a direct and proximate result of Defendants' breaches of their duties and the defective and unreasonably dangerous condition of the Strut Compressor, Plaintiff sustained and will sustain injuries and damages including:

a.    Traumatic brain injury;

b.    Multiple fractures of the bones of his eyes, nose, sinuses, and other bones of his face;

c.    Loss of six teeth;

d.    Right shoulder injury including labrum tearing and tendinopathy and resulting pain and reduced range of motion;

e.    Lacerations, hemorrhages, hematomas, and bruises;

f.    Regular and persistent headaches, cognitive and short term memory problems, dizziness, light sensitivity, sleep disturbances;

g.    Psychological injuries and emotional trauma including depression and anxiety;

h.    Permanent physical impairment;

i.    Physical pain and discomfort; and

j.    Inability to perform daily living activities that he performed and enjoyed before the injuries.

**FOR A SECOND CAUSE OF ACTION**
**Negligence**
**As to Quality Stainless**

63.    Plaintiff realleges the allegations in the preceding paragraphs as if fully set forth

11

herein.

64.    Quality Stainless owed a duty to persons using the Strut Compressor, including Plaintiff, to design and manufacturer the Strut Compressor in a manner that did not create an unreasonable risk of harm to users.

65.    Quality Stainless breached its duties to Plaintiff.

66.    Quality Stainless was negligent, grossly negligent, willful, wanton, and reckless in designing and manufacturing the Strut Compressor in a manner creating an unreasonable danger to persons using the Strut Compressor.

67.    Quality Stainless was negligent, grossly negligent, willful, wanton, and reckless in knowing or having should have known of the risk of substantial harm from the sudden, unintentional decompression of a compressed spring in the Strut Compressor and failing to take reasonable steps to design and manufacture the Strut Compressor to eliminate or minimize the risk of harm to users from the sudden, unintentional decompression of a spring.

68.    Quality Stainless's design and manufacture of the Strut Compressor in a manner where the Strut Compressor does not fully restrain the spring and does not prevent the spring from coming loose and forcefully shooting out of the Strut Compressor falls below the level of care a reasonable machine designer and manufacturer would exercise and falls below the level of care recognized in the industry.

69.    Quality Stainless's design and manufacture of the Strut Compressor in a manner where the four arms holding the four claws cannot be locked into place and can move even after the claws are set against a spring to be compressed falls below the level of care a reasonable machine designer and manufacturer would exercise and falls below the level of care recognized in

12

the industry.

70.    Quality Stainless's design and manufacture of the Strut Compressor in a manner where the "safety cage" does not prevent a suddenly and unintentionally decompressed spring from shooting out of the strut compressor or projecting other parts of the strut assembly falls below the level of care a reasonable machine designer and manufacturer would exercise and falls below the level of care recognized in the industry.

71.    Quality Stainless's design and manufacture of the Strut Compressor in a manner where the user of the machine is not physically separated from the hazard of a compressed spring falls below the level of care a reasonable machine designer and manufacturer would exercise and falls below the level of care recognized in the industry.

72.    Quality Stainless's negligent, grossly negligent, willful, wanton, and reckless design and manufacture of the Strut Compressor proximately caused Plaintiff's injuries and damages.

73.    As a direct and proximate result of Quality Stainless's breaches of its duties and negligent acts and omissions, Plaintiff sustained and will sustain injuries and damages including:

a.    Traumatic brain injury;

b.    Multiple fractures of the bones of his eyes, nose, sinuses, and other bones of his face;

c.    Loss of six teeth;

d.    Right shoulder injury including labrum tearing and tendinopathy and resulting pain and reduced range of motion;

e.    Lacerations, hemorrhages, hematomas, and bruises;

f.   Regular and persistent headaches, cognitive and short term memory problems, dizziness, light sensitivity, sleep disturbances;

g.   Psychological injuries and emotional trauma including depression and anxiety;

h.   Permanent physical impairment;

i.   Physical pain and discomfort; and

j.   Inability to perform daily living activities that he performed and enjoyed before the injuries.

WHEREFORE, Plaintiff demands a jury trial and prays for judgment against Defendants for actual and punitive damages and for such other and further relief as this Court deems just and proper.

THE STEINBERG LAW FIRM, LLC
116 S. Goose Creek Blvd.
Goose Creek, SC 29445
(843) 720-2800


By:  _____s/Elliotte Quinn_____
F. Elliotte Quinn IV
SC Bar No.: 100450
USDSC Fed. ID No.: 12563
equinn@steinberglawfirm.com

Michael Jordan
SC Bar No.: 74902
USDSC Fed. ID No.: 10304
mjordan@steinberglawfirm.com

*Attorneys for Plaintiff*